UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| BRIAN ALLEN GLADSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 20-064-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ANDREW M. SAUL, Commissioner of | ) | **MEMORANDUM OPINION** |
| Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Brian Allen Gladson challenges the denial of his application for Social Security benefits. The parties have filed cross-motions for summary judgment. [Record Nos. 17, 19] Gladson argues that the Administrative Law Judge ("ALJ") assigned to his case failed to properly evaluate his subjective complaints of pain and that the defendant's disability determination is not supported by substantial evidence. [Record No. 17, p. 2] However, following a full review of the record, the Court concludes that the defendant's decision is supported by substantial evidence. As a result, Defendant Andrew Saul, Commissioner of Social Security's, motion for summary judgment will be granted and the relief sought by Gladson will be denied.

## I.   PROCEDURAL HISTORY

Gladson filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act") on August 2, 2017. [*See* Transcript, hereinafter "Tr.", 276-82.] He alleged a disability onset date of July 5, 2017. [Tr. 276] Gladson's

application was denied initially and upon reconsideration.  [Tr. 195-209, 212-26]
Thereafter, an administrative hearing was held before ALJ Donald A. Rising.  [Tr. 132-65,
241-43]  ALJ Rising issued a decision unfavorable to Gladson on February 8, 2019.  [Tr.
81-99]  The Appeals Council denied review on February 14, 2020.  [Tr. 1-7]  Gladson has
exhausted his administrative remedies and this matter is ripe for review under 42 U.S.C.
§§ 405(g), 1383(c)(3).

## II.    RELEVANT FACTS

Gladson was forty-two years old on the date of his administrative hearing.  [*See* Tr.
276]  He has a high school education and past relevant work in the coal industry, primarily
as a laborer and machine operator.  [Tr. 142, 303]  Gladson was terminated from his
employment while on medical leave in July 2017 following a cardiac catheterization
procedure.  [Tr. 143]  Pain in Gladson's back and right shoulder has allegedly prevented
him from returning to his previous employment.  [*Id.*]

Gladson filed for DIB alleging that the following conditions limited his ability to
work: chest, back, and shoulder pain, arthritis, pancreatitis, bipolar disorder, depression,
and anxiety.  [Tr. 302]  Gladson stated during the administrative hearing that his back pain
is the result of "normal wear and tear" from prior work and that the pain was treated with
medication.  [Tr. 144-45, 980]  A February 2018 x-ray revealed no visible spinal problems.[1]
[Tr. 684]  Nevertheless, Gladson alleges that his back "hurts all the time," prevents him
from walking long distances, and restricts his daily movement from "the couch or recliner

---

[1]    Gladson was treated for back pain related to a kidney stone in July 2017.  [*See* Tr. 512-
23.]

- 2 -

to the bathroom and back." [*See* Tr. 149; *see also* Tr. 934.]  Gladson's shoulder pain began

in 2012 but has not been medically diagnosed or treated.  [Tr. 146, 156]  He testified that

he struggles to hold his arm above his head for more than thirty seconds.  [Tr. 157]  And

to alleviate his back and shoulder pain, Gladson claims that he must lie down for over half

of each day.  [Tr. 158]

ALJ Rising also questioned Gladson about the severity of his heart condition and

attendant chest pain.  Gladson responded that he had three blockages, one of which had

been surgically enlarged, but his doctor had chosen not to open the artery with a stent.  [*See*

Tr. 147-48; *see also* Tr. 396-98.]  He described the pain as "like . . . a pair of pliers on [his]

heart," and stated that the pain cuts each breath short.  [Tr. 159]

Gladson described his symptoms related to pancreatitis as "some[one] shoving a

knife in [his] stomach."  [Tr. 152]  He alleged that it prevents him from eating because he

is not able to control his bowels and that he had lost twenty pounds as a result.  [Tr. 152,

160]  Gladson was hospitalized with abdominal pain and diagnosed with pancreatitis

caused by alcoholism in April 2018.  [Tr. 743-44]  May and June 2018 follow-up

appointments showed continuing pain but "significant improvement."  [Tr. 898, 957]

Gladson testified that he had undergone mental health treatment since his father died

in 2007.  [Tr. 150]  He struggles with alcohol abuse and sadness caused by the deaths of

friends and family.  [Tr. 150-51] Because a number of his friends were killed while working

in the coal mines, Gladson alleges that his depression and anxiety would prevent him from

concentrating, should he return to his former employment.  [Tr. 151]

Gladson has suffered a number of mental health crises.[2]  In 2010, he attempted to shoot himself, but the gun misfired.  [Tr. 55, 104]  He was voluntarily admitted to the Hazard Appalachian Regional Healthcare facility on July 18, 2017, with complaints of suicidal thoughts and a plan to shoot himself.  [Tr. 486, 504]  He reported increasing depression, consumption of alcohol, definite suicidal thoughts, and hallucinations.  [Tr. 505-06]  Gladson was again admitted on July 24, 2017,[3] with complaints of suicidal thoughts and pancreatitis caused by alcoholism.  [Tr. 430]  After his pancreatitis symptoms were treated, he was transferred to the psychiatric center and treated for bipolar disorder and alcoholism.  [Tr. 434-35]  At the time, Gladson reported drinking 750 milliliters ("a fifth") of alcohol per day.  [Tr. 434]  He was prescribed medication, his symptoms subsided, and he was discharged on July 28, 2017.  [*Id.*]

Gladson began treatment for alcohol abuse with Dr. Janet Nantz.  [Tr. 541, 592-93, 590, 594-95, 599-600, 611, 613, 668, 677-78, 967, 971]  Nevertheless, he was again admitted to psychiatric care on November 25, 2017, with suicidal ideation and a plan to shoot himself.  [Tr. 993]  After discharge, he was treated by Dr. Syed Raza for his alcoholism and related mental-health symptoms.  [*Id.*]  He reported continuing to drink a fifth of alcohol a day leading up to the hospitalization, but he ceased alcohol consumption

---

[2]    At the time of hearing before ALJ Rising, Gladson had three documented suicide attempts.  In supplemental filings to the Appeals Council, an additional suicide attempt was disclosed.  [Tr. 51-80]

[3]    It is unclear whether Gladson was discharged and re-admitted between July 18 and July 24, or whether he underwent treatment for pancreatitis during this period.  However, this factual issue does not alter the Court's conclusion that ALJ Rising properly evaluated the severity of Gladson's medical condition, as explained below.

after discharge.  [Tr. 987, 991, 993]  By the time of the administrative hearing, Gladson had stopped drinking for nearly four months, and he stated that his mental health symptoms were managed well by his medication.  [Tr. 151, 161]

Unfortunately, Gladson relapsed in early October 2018, and his emotional state deteriorated.  On October 10, 2018, he severely cut his hand while swinging a lawnmower blade at his ex-wife's boyfriend.  [Tr. 27-41, 103]  On October 16, 2018, Gladson reported to Dr. Raza that he felt as though he would injure someone if he did not receive medical treatment, and he was admitted to the hospital with suicidal ideation due to depression. [Tr. 101-105]  He was treated and discharged on October 22, 2016, with recommendations that he follow-up with Dr. Raza.  [Tr. 101]

ALJ Rising found that Gladson suffered from the following severe impairments that significantly limit his ability to perform basic work activities: coronary artery disease, degenerative disc disease, pancreatitis, depression, and alcoholism.  [Tr. 86]  However, the ALJ determined that Gladson did not suffer from an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments ("Listings") contained in 20 C.F.R. pt. 404, subpt. P, app. 1 for mental or physical disorders. [Tr. 86; *see also* 20 C.F.R. § 404.1520(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").]

The ALJ first considered whether Gladson's physical impairments met a Listing. He considered Listing 1.04, which covers disorders of the spine that result in nerve root

compression and are accompanied with either: pain and motor function loss; documented inflammation of the arachnoid resulting in severe burning; or lumbar spine stenosis that causes inability to ambulate effectively.  20 C.F.R. pt. 404, subpt. P, app. 1.  But the ALJ found "no evidence" of these conditions and noted that Gladson has "normal motor function[s]."  [Tr. 87]

ALJ Rising next considered whether Gladson's condition met Listing 4.04(C), which covers coronary artery disease that results in "very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living."  20 C.F.R. pt. 404, subpt. P, app. 1.  He reasoned that Gladson is able to perform his own personal care and shopping, and that he is able to travel outside his home alone.  [Tr. 87]  As such, the ALJ found that the criteria of Listing 4.04(C) were not met.

ALJ Rising considered Listing 9.00(B)(5) for various endocrine disorders, including pancreatitis.  20 C.F.R. pt. 404, subpt. P, app. 1.  However, he found no evidence that Gladson's pancreatitis met the severity of a Listing because it had not caused him to suffer "any amputations, neuropathy, retinopathy, digestive issues, infections, seizures, or pancreatic related cognitive impairments."  [Tr. 87]  Therefore, the ALJ concluded that Gladson's physical impairments did not meet or medically equal the severity of a Listing.

ALJ Rising next considered whether Gladson's mental impairments met either Listing 12.04 or 12.06 for depressive and anxiety disorders, respectively.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  To meet either of these Listings, a claimant must show that his or her mental impairments are accompanied by "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning: [u]nderstand, remember, or

apply information; [i]nteract with others; [c]oncentrate, persist, or maintain pace; or [a]dapt or manage oneself." [*Id.* (collectively "the Paragraph B criteria")]  ALJ Rising considered each of the criteria in turn.

The ALJ found that Gladson's ability to understand, remember, or apply information was only moderately limited.  [Tr. 87]  He relied on treatment notes reporting that Gladson's thoughts were clear and coherent, his perception, cognition, and memory were normal, and he had average intellectual function and judgment.  [Tr. 87, 454, 674]  Rising relied on similar evidence to conclude that Gladson's ability to concentrate, persist, or maintain pace was only moderately limited.  [Tr. 88]

Further, the ALJ found that Gladson suffered only a moderate limitation on his ability to interact with others.  [Tr. 87]  Acknowledging Gladson's irritability and alleged social isolation, he found that Gladson demonstrated a cooperative attitude and admitted to being able to go out alone and shop in stores.  [Tr. 88]  Finally, ALJ Rising concluded that Gladson's ability to adapt or manage himself was only moderately limited.  [*Id.*]  He acknowledged Gladson's claimed inability to handle stress, reports that Gladson failed to perform hygiene tasks, and his recurrent alcoholism.  [*Id.*]  But he found that Gladson exhibited fair to good judgment and acknowledged that he was able to care for himself, drive, go out alone, and shop.  [*Id.*]  Therefore, ALJ Rising concluded that Gladson had not demonstrated that he met the Paragraph B criteria of either Listing 12.04 or 12.06.

Moreover, a claimant may meet either Listing 12.04 or 12.06 by showing that his or her disorder is "serious and persistent," that is, the symptoms persist for over two years and cause a "minimal capacity to adapt to changes in your environment or to demands that are

not already part of your daily life." 20 C.F.R. pt. 404, subpt. P, app. 1 (collectively "the Paragraph C criteria"). ALJ Rising considered whether Gladson had met these alternative criteria and concluded that he did not. [Tr. 88] Specifically, he noted that Gladson had not demonstrated minimal capacity to adapt to changes in his environment. [*Id.*]

Having concluded that Gladson did not meet a Listing, the ALJ determined that he had residual functional capacity ("RFC") capable of performing light work, subject to the following limitations: Gladson may frequently climb stairs, stoop, crouch, crawl, and reach overhead; he may occasionally climb ladders, ropes, or scaffolds; he is limited to tasks that require simple instructions, brief learning periods, little independent judgment, and minimal variation in routine; and he may have frequent supervisor and/or co-worker interaction, but only occasional public interaction. [Tr. 89]

To assign the RFC, ALJ Rising first found that Gladson's medically determinable impairments could reasonably cause the alleged symptoms, but he concluded Gladson's statements regarding the severity, persistence, and limiting effects of the symptoms inconsistent with the medical evidence. [Tr. 90] For example, he determined that Gladson's complaints of uncontrollable bowel movements due to pancreatitis found no support in the record. [*Id.*] He also noted that medical records undercut Gladson's claims about the limiting effects of his back and shoulder pain. [Tr. 90-91] Regarding the alleged mental impairments, ALJ Rising found that treating physicians routinely reported that Gladson had "euthymic mood, intact memory, coherent thinking, linear and goal directed thoughts, and good eye contact." [Tr. 91 (citing Tr. 597)] Therefore, the determined that Gladson's subjective complaints were largely inconsistent with the medical evidence.

The ALJ also considered whether various medical opinions were consistent with the medical evidence.   He found state agency non-examining consultant Dr. Sudhideb Mukherjee's opinion persuasive.  [Tr. 91, 219-21]  Dr. Mukherjee concluded that Gladson could perform a limited range of light work, with the limitations described in the RFC.  [Tr. 219-21]  ALJ Rising partially rejected the more restrictive opinion of Dr. David Muffly, who examined Gladson in connection with a 2017 workers' compensation claim.  [Tr. 90-91; 942-50]  Dr. Muffly concluded that Gladson should limit overhead lifting to twenty-five pounds, and that he should avoid all bending, stooping, and overhead work.  [Tr. 945]  ALJ Rising found the former restriction was supported by the medical evidence, but rejected the latter restrictions as inconsistent with the record.[4]  [Tr. 91]

Dr. Raza provided a treating physician opinion regarding Gladson's mental impairments.  [Tr. 1009-1010]  He reported that Gladson's "ability to adjust to a job" and "ability to adjust personally and socially" were severely limited by his mental conditions. [*Id.*]  ALJ Rising detailed the medical evidence supporting Gladson's mental impairments, including  Dr.  Raza's  own  treatment  notes,  and  determined  that  the  opinion  did  not accurately reflect Gladson's functional capacity.   [Tr. 92]  He noted that Dr. Raza's treatment notes, which indicated less severe impairments than the proffered opinion, were corroborated by other treating physicians.  [Tr. 92]  As such, the opinion was an outlier that was likely "heavily weighted on [Gladson's] subjective complaints."  [Tr. 92]  ALJ

---

[4]      The ALJ also rejected the examining opinion of Dr. David Jenkinson, who opined that Gladson could return to coal mining.  [Tr. 1097-1104]  ALJ Rising found that this opinion "broache[d] an ultimate issue reserved to the Commissioner" and, therefore, rejected it.  [Tr. 91]

Rising found that state agency non-examining consultant Dr. Christi Bruenig's opinion was more persuasive. [*Id.*; Tr. 216-17]

Next, ALJ Rising concluded that Gladson's RFC would prevent him from performing his past relevant work. [Tr. 92] But considering Gladson's age, education, work experience, and RFC, he found that there are jobs that exist in significant numbers in the national economy that Gladson could have performed after the alleged onset date. [Tr. 92-93] Therefore, he held that Gladson was not disabled under the Act. [Tr. 93]

## III.   STANDARD OF REVIEW

The Act defines a "disability" as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). To determine whether a claimant is disabled under the Act, the ALJ follows "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of satisfying the first four steps of the process, and the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments that limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). At step three, if the claimant can demonstrate that he has a severe

impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R. § 404.1520(d).  But if the claimant does not meet a Listing, the ALJ will assess and make a finding about a claimant's RFC before moving to step four.  20 C.F.R. §§ 404.1520(e), 404.1545.

Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work.  20 C.F.R. § 404.1520(e).  If the claimant can perform his past work, he is not disabled.  20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether he can perform other work.  If he cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. § 404.1520(g).  "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching her decision.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).  The Court must examine the entire record, but it may not review the record *de novo*, resolve conflicts in the evidence, or make credibility determinations.  *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012).  Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.  42 U.S.C. § 405(g); *Bass*, 499 F.3d at 509.

## IV.   ANALYSIS

Gladson argues that a number of the ALJ's conclusions are erroneous.  Specifically, he contends that both his subjective complaints and Dr. Raza's opinion regarding the severity of his mental health conditions were improperly discounted.[5]  [Record No. 17-2, p. 12-15]  He also argues that the decision is generally unsupported by substantial evidence.  [*Id.* at pp. 16-17]  The Commissioner, however, contends that ALJ Rising's credibility determinations were reasonable, and that his decision is supported by substantial evidence.  [Record No. 19, pp. 9-13]

### A.   The ALJ properly considered Gladson's subjective complaints caused by his mental impairments.

ALJ Rising evaluated Gladson's subjective complaints and found them inconsistent with the medical evidence.  A claimant's subjective complaints of symptoms are evaluated

---

[5]    Gladson repeatedly suggests that ALJ Rising "failed to address" his psychological condition and the medical evidence supporting his mental impairments.  [Record No. 17-2, p. 12-14]  This argument is contradicted by a plain reading of ALJ Rising's decision, and the Court will give it no further consideration.  [*See* Tr. 87-88, 91-92.]

using a two-step process.  *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1237954 (Mar. 24, 2016).[6]  First, there must be medically determinable impairments that could reasonably be expected to produce the alleged symptoms.  20 C.F.R. § 404.1529(b).  ALJ Rising found that Gladson had provided sufficient medical evidence to conclude that his alleged symptoms could be the result of his medical impairments.  [Tr. 90]

The second step, however, requires that a claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms find support in the record. 20 C.F.R. § 404.1529(c).  Here, ALJ Rising concluded that Gladson's statements concerning the severity of his mental-health symptoms were not credible because they have no such support.  He noted that Gladson's treating physicians routinely reported normal mental functioning.  [*See* Tr. 434, 454, 597, 601, 993, 674]  And elsewhere, he mentioned that Gladson displayed a "cooperative attitude" while testifying, which undercut his claims of severe social impairment.  [Tr. 88]

Given that this Court is "limited to evaluating whether the ALJ's explanations for partially discrediting [Gladson] are reasonable and supported by substantial evidence in the record," ALJ Rising's conclusions must be upheld.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  Gladson merely argues that the ALJ's conclusion is "inconsistent with the record as a whole," not that his consideration of the evidence was unreasonable. [Record No. 17-2, p. 15]  And ALJ Rising reasonably explained his decision, relying on

---

[6]    Gladson cites Social Security Ruling 96-7p, but that Ruling was superseded by Ruling 16-3p prior to the ALJ's decision, as the Commissioner correctly notes.  [Record No. 19, p. 12 n.1]  Nevertheless, the analysis is the same as it pertains to the parties' arguments.  *See* SSR 16-3, 2016 WL 1119029, at *10 (Mar. 16, 2016).

the medical evidence, that Gladson's statements were not credible.  *See Jones*, 336 F.3d at

476 (An ALJ's credibility decision is entitled to "great weight and deference.").

      **B.**      **The ALJ properly weighed Dr. Raza's opinion.**

      Gladson contendss that Dr. Raza's opinion was improperly discounted.  Medical

source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c).[7]  The

factors include: supportability; consistency; the source's relationship with the claimant; the

source's specialized area of practice, if any; and "other factors that tend to support or

contradict a medical opinion."  20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors

of supportability [] and consistency [] are the most important factors we consider when we

determine how persuasive we find a medical source's medical opinions . . . .").

      ALJ Rising properly considered these factors in determining whether Dr. Raza's

opinion was persuasive.  He considered each of Gladson's "15-minute encounters" with

Dr. Raza and found that normal cognitive findings were consistently reported.  [Tr. 91,

985, 987, 989, 991, 993, 1095]  These findings were corroborated by other treating and

examining physicians, including Dr. Raza's colleagues.  [*See* Tr. 570-71, 615, 628-29, 668-

70, 969, 973.]  As such, the ALJ concluded that Dr. Raza's contrary opinion was largely

inconsistent with the medical evidence.  *See* 20 C.F.R. § 404.1520c(c)(2) ("The more

consistent a medical opinion(s) . . . is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.").

---

[7]     The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017.

Moreover, ALJ Rising pointed out that Dr. Raza examined Gladson on the date he prepared his medical source opinion. [Tr. 91-92] Although his treatment notes reported normal psychomotor activity, linear thoughts, and fair judgment and insight, he provided an opinion that Gladson's ability to make any occupational, social, or performance adjustments was poor. [Tr. 1008-10, 1094-96] ALJ Rising considered these statements to be inconsistent, and reasoned that Dr. Raza relied too heavily on Gladson's subjective complaints when preparing his opinion. [Tr. 92]

Further, checklist or "circle-the-answer" forms, like the ones Dr. Raza submitted, are "weak evidence at best." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 473 (6th Cir. 2016) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)). And there is no indication that Dr. Raza relied on anything but Gladson's subjective claims when he indicated the alleged severity of his symptoms. [Tr. 1009-10] The only explanations provided for Dr. Raza's opinion were brief notes, such as "poor attention, poor concentration, . . . [and] cannot be around people." [Tr. 1009] Because these are merely subjective complaints rather than medically-documented impairments, the ALJ reasonably concluded that the opinion was unpersuasive. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be.").

## C.    The ALJ's decision is supported by substantial evidence.

Gladson argues that ALJ Rising selectively included "only portions of the pertinent evidence which cast[s] the claimant in an unfavorable light." [Record No. 17-2, p. 16] An

ALJ's "selective inclusion of only those portions of the report that cast [a claimant] in a capable light" may suggest that the ALJ only considered those portions of medical evidence that support the ALJ's conclusion. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240–41 (6th Cir. 2002). But Gladson points to no evidence that ALJ Rising failed to consider in its entirety. He merely argues that "[w]hen the record in this case is considered in its entirety," the only conclusion is that Gladson "could not perform a wide range of even sedentary work." [Record No. 17-2, pp. 15-16] As noted, ALJ Rising considered the entire record and weighed the evidence to make a disability determination. For example, when considering Gladson's mental health impairments, ALJ Rising examined each encounter with Dr. Raza to explain his decision to discount Raza's opinion. [Tr. 91-92] Thus, it is unclear which medical evidence Gladson believes ALJ Rising "picked and chose . . . in such a manner that is inconsistent with the record as a whole." [Record No. 17-2, p. 13]

Gladson's challenges aside, ALJ Rising properly considered the evidence presented and supported his decision with substantial evidence. Because he had "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [Gladson's] subjective complaints," this Court's review is limited to whether he relied on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). And at each stage of the analysis, ALJ Rising explained the evidence that supported his conclusion and why he considered certain evidence less persuasive. He considered the combined effects of Gladson's impairments and assigned an RFC that addressed the impairments. At the final step of the analysis, the

ALJ relied on a vocational expert to determine that significant jobs exist in the national economy that Gladson may perform.  His decision is supported by substantial evidence.

**V.     CONCLUSION**

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.     Plaintiff Brian Gladson's motion for summary judgment [Record No 17] is **DENIED**.

2.     Defendant Commissioner Andrew Saul's motion for summary judgment [Record No. 19] is **GRANTED**.

Dated: November 12, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

- 17 -
